Filed 5/7/14

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(El Dorado)

| | |
|---|---|
| THE PEOPLE,<br><br>　　　　Plaintiff and Respondent,<br><br>　　v.<br><br>JEFFERY ALAN MATTHEWS,<br><br>　　　　Defendant and Appellant. | C070013<br><br>(Super. Ct. No. P08CRF0429) |

A jury found defendant Jeffery Alan Matthews guilty of: (1) conspiracy to commit transportation of a controlled substance, possession for sale of a controlled substance, and possession of a controlled substance; (2) transportation of a controlled substance; (3) possession for sale of a controlled substance; and (4) possession of a controlled substance. Defendant admitted a special allegation that he had a prior conviction for possession of a controlled substance for sale.

The trial court sentenced defendant to county jail for an aggregate term of seven years on the conspiracy count, consisting of the upper term of four years, plus three years for the prior conviction enhancement. The sentences for the remaining counts of two years each were stayed pursuant to Penal Code section 654.

1

Defendant argues the trial court erred when it denied his motion to suppress evidence discovered in a traffic stop. He also argues there was insufficient evidence to convict him because there was no evidence he was in possession or constructive possession of a controlled substance. We disagree and shall affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

Deputy James Peterson was alone on patrol around 1:00 a.m. when his attention was drawn to three vehicles following too closely together. At that hour there was very little traffic on the road. The middle vehicle was a white Camaro. The rear vehicle was a Thunderbird. The Camaro had no rear license plate and a cracked windshield. Deputy Peterson followed the cars from Missouri Flat Road, a surface street, to Highway 50 where they headed east, to the next exit where the cars pulled into a gas station. While he was following the cars, he ran the license plate on the Thunderbird, and discovered the plate had been suspended. The front vehicle drove past the pumps and left, but the Camaro and Thunderbird stopped on either side of the same pump. After they stopped, Deputy Peterson activated his overhead lights. He pulled in behind the Thunderbird and contacted the driver, codefendant Amy Taylor-Ameneyro.

As Deputy Peterson approached Taylor-Ameneyro, he told the driver of the Camaro, defendant Matthews, that he had issues with his vehicle, because it had no rear license plate and a cracked windshield.

While Taylor-Ameneyro was still seated in her car, Deputy Peterson asked her for her license and registration. Taylor-Ameneyro appeared very nervous and fidgety. About that time, Deputy Peterson noticed that defendant was no longer by his vehicle. He was unsure where defendant was at that point. Deputy Peterson noticed that Taylor-Ameneyro was trembling, and her pupils were dilated. She stated that she was on her way to Sacramento, and that she was traveling with defendant.

2

Deputy Peterson had Taylor-Ameneyro exit her car, both because he wanted to initiate field sobriety tests on her and for his own safety because she had a pit bull in the car with her. When she got out, he noticed she had a large bulge in the front pocket of her zippered hoodie. It was a pouch, and he asked if he could search it. She declined, claiming it contained embarrassing female items. Deputy Peterson told her to put the pouch on his patrol vehicle. When she did so, it made a loud "clank" noise. Because it was still within her reach, he attempted to push it away from her, but it was magnetized to his patrol car. He was able to move the pouch away, but did not open it. He then had Taylor-Ameneyro take a seat in his patrol vehicle.

While she was seated there, he saw defendant walk out of the convenience store attached to the gas station. Deputy Peterson again told defendant that there were issues with his vehicle that Peterson wanted to address with him. Defendant told Deputy Peterson that his rear license plate had a hinge that allowed the plate to tilt down. Deputy Peterson estimated 10 minutes had elapsed at this point.

Deputy Peterson placed a digital recorder in the front seat of the patrol vehicle. Deputy Peterson then put defendant in the patrol car and took Taylor-Ameneyro out. Deputy Peterson had placed defendant there because defendant had already walked off once, and Peterson was unable to deal with both defendant and Taylor-Ameneyro at the same time.

Deputy Peterson advised Taylor-Ameneyro that he suspected she was under the influence of a controlled substance, and began performing field sobriety tests on her. He performed four field sobriety tests on her, each of which took about a minute. By the time he had finished the tests, three other officers had arrived on the scene. Deputy Peterson had one of the other officers start a citation for defendant.

Deputy Peterson determined Taylor-Ameneyro was under the influence of a stimulant, but she claimed she was taking prescription medication. Deputy Peterson escorted Taylor-Ameneyro back to her car to retrieve the medicine. While she was

3

looking in her purse located in the car, Deputy Peterson noticed a marijuana pipe in the driver-side door pocket. At this point, he put Taylor-Ameneyro in the patrol car with defendant and searched the pouch. The pouch contained what appeared to be a large amount of methamphetamine, and a field chemical test returned a presumptive positive for methamphetamine. He conducted a full search of the Thunderbird, but nothing further was located. Deputy Peterson placed Taylor-Ameneyro under arrest and placed her, handcuffed, in the back of the patrol car. Deputy Peterson estimated a half-hour to 45 minutes had elapsed since he initiated the traffic stop.

Deputy Peterson then removed defendant from the patrol car and had a conversation with him about the methamphetamine. Defendant claimed not to have any knowledge of the methamphetamine. Defendant consented to a search of his person and vehicle. Defendant told Peterson that the Camaro was not his. With the help of the other officers who had arrived, Deputy Peterson searched defendant's person and car.

They discovered a small Ziploc baggy containing other empty Ziploc baggies magnetized to the inside of the passenger-side rear wheel well of the car defendant was driving. The baggies were of the type used to package and sell methamphetamine. Under every wheel well there were scrape marks from what they suspected was a magnet being attached to the inside of the wheel well. Defendant stated he did not know anything about the baggies, and repeated that the car was not his.

In defendant's wallet, Deputy Peterson found what he suspected were pay/owe sheets.

At this point Deputy Peterson reviewed the recording from the recorder he had placed in the front of his vehicle and listened to it. Much of the recording is inaudible, but defendant can be heard asking if "it" is under the hood, and saying, "I wish you had it under the hood, man. Shit." Taylor-Ameneyro responds, "I didn't have time. I didn't even think about it. At least I can say . . . (inaudible) . . . wear a sweatshirt." Defendant told Taylor-Ameneyro he would bail her out.

4

Deputy Peterson testified at trial that magnets are often used as a makeshift hide-a-key to attach drugs to a hidden portion of a vehicle. He testified that pay/owe sheets are a way of documenting debts and monies owed in drug sales. The items he typically sees in cases of illegal drug sales are a large amount of the controlled substance, packaging to divide the substance for sale, scales, and pay/owe sheets or ledgers. He stated that any one item alone might be insignificant, but the totality of the evidence is significant to indicate sales of an illegal substance. He testified that it was common to find significant items of evidence divided between suspects.

Detective James Applegate testified as an expert in the possession for sale of controlled substances. He also testified that in cases involving multiple individuals, it is common to find the evidence split between the individuals. This is done so if one item of evidence is found, another item might not be. His opinion, based on the evidence collected, was that the methamphetamine was possessed for sale.

Taylor-Ameneyro had over $500 in her wallet and purse. Defendant had about $45 in fives and ones. The methamphetamine was weighed and found to be 38.13 grams. This would be enough for around 380 uses.

Defendant was charged with conspiracy to commit transportation of a controlled substance, possession for sale of a controlled substance, and possession of a controlled substance (count I), transportation of a controlled substance (count II), possession for sale of a controlled substance (count III), and possession of a controlled substance (count IV). The information contained a special allegation that defendant had been convicted previously of possession for sale of a qualifying controlled substance, which, if proven, would result in a consecutive three-year term. (Health & Saf. Code, § 11370.2, subd. (c).)

Defendant made a motion to suppress the evidence obtained during the traffic stop and resulting search on the ground the search was warrantless. At the hearing on the motion, defendant argued the time taken for the search exceeded the time reasonably

5

necessary for the stop. The trial court denied the motion to suppress. It found no impropriety in any of the officer's conduct. At the end of the ruling, defense counsel sought to clarify that Deputy Peterson was alone approximately 10 minutes before the other officers arrived, and that the remainder of the detention took approximately 20 to 35 minutes. The trial court responded, "the record is clear on that."

Defendant admitted the prior conviction allegation, and the jury found him guilty on all counts.[1] The trial court sentenced defendant to a seven-year term in county jail on count I (the upper term of four years plus the three-year enhancement), and stayed the remaining two-year terms on each of the remaining counts.

DISCUSSION

I

The Trial Court Properly Denied the Motion to Suppress

As indicated above, the trial court denied defendant's motion to suppress evidence seized as a result of the traffic stop.

Defendant argues he was subjected to an unduly prolonged detention which became an arrest without probable cause. He argues that once it was established that he was a licensed driver and that the car was registered to Taylor-Ameneyro, there was no further reason to detain him, and that the facts coming to light during the detention supported further detention of Taylor-Ameneyro only. We disagree.

We uphold the trial court's factual findings if supported by substantial evidence, and exercise our independent judgment on the question of whether a search was unreasonable. (*People v. Camacho* (2000) 23 Cal.4th 824, 830.)

---

[1] This was defendant's third trial. The court declared a mistrial in the first trial after the jury informed the court it was hopelessly deadlocked, and the trial court in the second trial granted a motion for new trial based on a clerical error in the verdict form.

6

"An investigatory stop exceeds constitutional bounds when extended beyond what is reasonably necessary under the circumstances that made its initiation permissible. [Citation.] Circumstances which develop during a detention may provide reasonable suspicion to prolong the detention. [Citation.] There is no set time limit for a permissible investigative stop; the question is whether the police diligently pursued a means of investigation reasonably designed to confirm or dispel their suspicions quickly. [Citations.]" (*People v. Russell* (2000) 81 Cal.App.4th 96, 101-102.)

Deputy Peterson stopped defendant because he was following too closely behind another car, because his rear license plate was not displayed, and because his windshield was cracked. The trial court properly found the initial stop was reasonable.

Circumstances quickly developed that provided reasonable suspicion to prolong the detention. Within the first 10 minutes of the stop, Deputy Peterson noticed that Taylor-Ameneyro was nervous and fidgety, and that she appeared to be under the influence of a controlled substance. Within the first 10 minutes of the stop, Deputy Peterson learned defendant and Taylor-Ameneyro were traveling together. Also during the first 10 minutes of the stop, Deputy Peterson knew that Taylor-Ameneyro was in possession of a pouch that had a magnet in it, which she did not want him to search. Given his knowledge that magnets are often used to attach drugs to a hidden portion of the vehicle, he could, during the first 10 minutes of the stop, "point to specific articulable facts that, considered in light of the totality of the circumstances, provide some objective manifestation" that defendant and Taylor-Ameneyro were involved in criminal activity. (*People v. Souza* (1994) 9 Cal.4th 224, 231.)

When the other officers arrived, they began preparing the citation for defendant. Immediately after Taylor-Ameneyro's field sobriety tests, and shortly after the other officers arrived, Deputy Peterson discovered the marijuana pipe and then the methamphetamine. The methamphetamine was discovered before defendant's citation was completed. The discovery of a large quantity of methamphetamine on his admitted

7

companion constituted a further circumstance providing a reasonable suspicion to prolong defendant's detention. Even though the methamphetamine was discovered on Taylor-Ameneyro, the two had admitted being together, defendant was driving her car, they were traveling in a suspicious manner at a late hour, and the quantity of methamphetamine discovered was such as to indicate sales rather than mere use.

The trial court did not err in denying defendant's motion to suppress evidence collected as a result of the traffic stop.

## II

### Sufficient Evidence Defendant Possessed the Methamphetamine

Defendant argues there was insufficient evidence he had possession or constructive possession of the methamphetamine, a necessary element to uphold his convictions for possession of a controlled substance and possession for sale of a controlled substance.

However, the prosecutor argued defendant was guilty of these crimes based on either an aiding and abetting theory or a conspiracy theory. The trial court accordingly instructed the jury that defendant could be guilty of the crimes charged on a theory of aiding and abetting, in which case he did not need to have been present when the crime was committed. If defendant did not have to be present, there was no requirement the jury find he actually possessed or constructively possessed the methamphetamine.

Defendant also makes a brief argument that there was insufficient evidence of aiding and abetting because there was no specific evidence of intent to facilitate the crime. We disagree. The evidence was that defendant and Taylor-Ameneyro were traveling together. Defendant was aware she was carrying a quantity of methamphetamine for sale as evidenced from the recorded conversation in which he asked "[i]s it under the hood or what?" To her answer he replied, "Ah, shit. Shit." Defendant was carrying what appeared to be pay/owe sheets. Attached to the car he was driving were packaging materials typically used to package drugs. There was expert

8

testimony that it is common in drug sales cases for items of evidence to be split up between the individuals involved. This is done on purpose in the hope that if they are caught, all the items will not be found. This was sufficient evidence defendant intended to facilitate the charged crimes.

The trial court also instructed on a conspiracy theory. Under a conspiracy theory, it was only necessary the jury find defendant intended to agree that *someone else* possess the methamphetamine, and that he or Taylor-Ameneyro committed an overt act to accomplish the charged offense. There was sufficient evidence from which the jury could infer that defendant made an agreement with Taylor-Ameneyro that she would carry the methamphetamine, while he carried the packaging material and the pay/owe sheets. There was evidence one or both of them committed the overt acts of hiding the methamphetamine, transporting it, and that they had the intent to deliver it.

Defendant's claim that there was insufficient evidence he constructively possessed the methamphetamine is groundless.

DISPOSITION

The judgment is affirmed.


    BLEASE    , Acting P. J.


We concur:


    BUTZ    , J.


    MAURO    , J.


9